# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM D. ELMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13 C 07543 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| ANTONIO SALAS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

The motions to dismiss of the United States [29] and the individual defendants [46] are granted. Because the defects requiring dismissal cannot be remedied, no further amendment will be permitted. The plaintiff's request for leave to file a Fourth Amended Complaint is therefore denied. Judgment is entered in favor of the defendants, and the case is terminated.

## STATEMENT

Plaintiff William D. Elmore is a former inmate at the Metropolitan Correctional Center "MCC" in Chicago, which is run by the Federal Bureau of Prisons ("BOP"), a defendant. Defendants Timothy Wright, Edward Martin, Willie Starks, and Robert Greer are Corrections Officers at the MCC; defendant Simon Jones is a Lieutenant and defendant Antonio Salas, a Captain. Elmore alleges that he was mistreated and neglected by these BOP employees during and after a 10-day stint in the MCC's Special Housing Unit ("SHU"). He brings various common-law claims for damages against the BOP under the Federal Tort Claims Act, 28 U.S.C. 1346(b)(1), and, against the individual defendants, constitutional claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Narcotics Bureau*, 403 U.S. 388 (1971).

The United States, on behalf of the BOP, and the individual defendants move separately to dismiss all of Elmore's claims in the Third Amended Complaint, which is the operative pleading. In response to the motions, Elmore sets forth additional allegations regarding his attempts to exhaust his administrative remedies; he alternatively requests leave to file a Fourth Amended Complaint including these new allegations. For the reasons that follow, the motions to dismiss are granted, and although this Court considers the newly alleged facts in ruling on the motions, the request to file a Fourth Amended Complaint is denied.

## FACTS

The allegations in the Third Amended Complaint ("TAC") must be taken as true for purposes the motions to dismiss. *See McCree v. Grissom*, 657 F.3d 623, 623 (7th Cir. 2011). The following recitation is therefore based on Elmore's allegations, supplemented where noted, and does not constitute a set of factual findings by this Court. According to the TAC, Elmore arrived

at the MCC on September 11, 2011. After being there for about a month, Elmore reported that he was receiving threats from another inmate; he alleges that the institution responded by moving him "against his will" to the Special Housing Unit ("SHU") for protection. Elmore stayed in the SHU from October 15, 2011 to October 25, 2011.

During the 10-day stay in the SHU, Elmore "experienced a series of anxiety attacks and became extremely emotional and/or suicidal" and "at various times" he "became so emotionally distraught and fearful, he experienced violent shaking, chest pain, and/or lack of breath." Furthermore, Elmore "was forced to stay in cells that had urine on and/or around the floor, walls, mirror, toilet, sink, and bed sheets."

On his sixth day in the SHU, Elmore informed defendant Timothy Wright that he was experiencing chest pains and shortness of breath and requested to change cells because he feared he would get into a fight with his cellmate. Wright ignored Elmore's complaints and, along with Defendant Edward Martin, threatened, taunted, intimidated, and harassed Elmore. Wright then said to Elmore, "I got a place for you." Elmore became extremely fearful, begged to stay in his cell, and began to cry. Wright then grabbed Elmore by the back of the neck, forced Elmore's head down, and yanked Elmore up while twisting Elmore's entire body by his neck until his face was about 1-2 inches from Wright's face and continued to threaten, taunt, intimidate, and harass Elmore. Wright then brought Elmore to a different cell in the SHU and shoved him in by his neck; he then stomped on, damaged, and threw Elmore's property on the floor. In the cell, Elmore rocked or shook uncontrollably. He asked defendant Simon Jones if he could talk to him, but Lieutenant Jones "was indifferent to and /or disregarded" him.

Elmore was so emotionally distraught and fearful that he experienced violent shaking, chest pains, and lack of breath. He laid in bed for several hours experiencing "severe chest pain, lack of breath, and soreness and/or pain in his neck, arms, and/or wrists." The next day his neck hurt even worse, and he still felt chest pain and soreness. When defendant Antonio Salas did a "walk around," Elmore reported what had happened the day before. "Defendant Salas became angry and/or upset and threatened, taunted, intimidated, and/or harassed Plaintiff. Defendant Salas was indifferent to and/or disregarded the Plaintiff's complaints of severe chest pain, lack of breath, and soreness and/or pain in his neck, arms, and/or wrists." During the rest of his time in the SHU, Elmore attempted to talk to Defendants Martin, Jones, Salas, Starks, and Greer about the incident, but all of them disregarded Elmore's requests and threatened, taunted, intimidated, and harassed Elmore. They also disregarded Elmore's complaints of severe chest pain, lack of breath, and soreness and pain in his neck, arms, and wrists.

Notwithstanding these allegations that his complaints were ignored, Elmore also alleges that, about 24 hours after defendant Wright moved Elmore to a new cell, a nurse visited Elmore in his cell and took pictures of his injuries. According to the TAC, the nurse said she would note that "there was no sign of injury due to the length of time that had passed before the nurse was called down" to see Elmore. The nurse's notes, however, which Elmore included with his response to the United States' motion, actually state: "Called to SHU for injury report for pt. injury happened 10-20-11, but we were just notified. . . . No injuries found on exam." Elmore was sent back to the general population on October 25, 2011.

On or about December 1, 2011, Elmore was called to the Lieutenant's Office, and an Internal Affairs investigator "had [Elmore] sign an affidavit regarding the incidents that occurred in the SHU." The affidavit makes clear that Elmore was aware of the identity of both defendant Wright and defendant Jones by this time. Elmore was later transferred to Oklahoma for a few days before being designated to the penitentiary in Litchfield, Kentucky, where he remained for over a year until he was transferred to the federal prison in Marion, Illinois to complete his sentence.

In the TAC Elmore asserts ten counts stemming from the incidents that occurred in the MCC's SHU. Counts I through V are *Bivens* claims. Specifically, Count I is a claim for excessive use of force against Defendant Wright for his alleged assault of Elmore. Count II is a claim for deliberate indifference to medical needs against all of the Individual Defendants for disregarding Elmore's medical needs and for waiting 24 hours to notify a nurse to examine Elmore. Count III is a claim for unsanitary prison conditions against all of the Individual Defendants for confining Elmore in a SHU cell that had urine on the floor, walls, mirror, toilet, sink, and bed sheets. Count IV is a claim for deliberate indifference to inmate safety against Defendants Salas and Jones for failing to protect Elmore and adequately supervise the other Correction Officers. Finally, Count V is a claim of "retaliation" against all of the Individual Defendants for intentionally violating Elmore's rights because of his status as a sex offender. Counts VI through X are FTCA claims, based on state law, against the BOP for assault and battery, intentional infliction of emotional distress, trespass to chattels, failure to properly supervise, and negligence.

According the TAC, Elmore "exhausted his administrative remedies against the United States." *See* TAC ¶ 10, ECF No. 27. The TAC alleges that Elmore filed an administrative claim for relief by submitting a "Sensitive B-10" form to the BOP, in which he alleged: "'assault and denied medical in SHU' on December 22, 2011; 'assault and denied medical in SHU' on January 11, 2012; 'sex offenders should be treated equal' on April 2, 2013; 'UDC appeal' on May 6, 2013; and 'required second phase of RDAP' on August 6, 2013." *Id.* ¶¶ 8-9. Elmore also alleges—without further elaboration—that he exhausted his remedies against the individual defendants. *Id.* ¶ 14. The individual defendants were named for the first time in the TAC filed on May 12, 2015. The original complaint, which was filed on October 21, 2013, named only the BOP as a defendant;[1] the first amended complaint of February 17, 2015, and the second amended complaint of March 12, 2015, each named eight "John Doe" officers.[2]

---

[1] More accurately, the *caption* names only the BOP. The body of the original complaint lists under the "Parties" heading: "Defendants, John Doe, were and are at all time material to this action, Corrections Officers employed by the United States Government and were at all time relevant to this action, acting within the course and scope of their employment as Corrections Officers." Compl. ¶ 7, ECF No. 1. The original complaint contained only common-law claims for negligent and intentional infliction of emotional distress and negligent supervision.

[2] Elmore was originally represented in this matter by retained counsel. When no return of service was docketed for more than four months after the complaint had been filed, this Court set a status hearing; local counsel appeared at that hearing and moved to dismiss the case without prejudice. Dkt. 5. That motion was granted. About five months later, this Court received a letter from Mr. Elmore professing befuddlement at the dismissal of the suit; that communication

Now the United States and the individual defendants each move to dismiss the Third Amended Complaint. The United States argues that the plaintiff failed to exhaust his administrative remedies under the FTCA. The individual defendants argue that the claims against them are untimely, that the plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and that the defendants are entitled to qualified immunity.

**DISCUSSION**

A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's well-pleaded factual allegations are accepted as true, but "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to a presumption of truth. *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012).

**I.  The United States' Motion to Dismiss**

The government moves to dismiss the TAC on the ground that it plainly reveals that Elmore failed to exhaust his administrative remedies as to the United States as required by the FTCA. It explains that "Sensitive BP-10 filings"—the only written complaints to which Elmore refers—are part of the prison grievance procedure under the Prison Litigation Reform Act ("PLRA").[3] The FTCA, on the other hand, requires a different administrative procedure

---

prompted this Court to set another hearing, at which Elmore's local counsel reported that in dismissing the suit he had been acting on instructions from a firm in Tennessee (Stewart Johnson Conner & Manson, LLP) that Elmore had retained (but which did not enter an appearance in this court, even though attorney Ronald A. Stewart signed the original complaint). Mr. Elmore confirmed that he had retained the Tennessee firm to assert his claims, and had fired that firm when it appeared that they were not proceeding on his behalf. Mr. Elmore represented, however, that he had not authorized the dismissal of his case and that he had been told by the Stewart firm that the case would remain pending while he found new counsel. On that basis, this Court reinstated the complaint, granted local counsel's motion to withdraw, and recruited counsel to represent Mr. Elmore. Mr. Elmore's new counsel moved promptly to serve the original complaint and to file the succession of amended complaints that culminated with the filing of the TAC.

[3] The internal prison grievance procedure that federal inmates need to satisfy in order to comply with the PLRA requires the sequential filing of four forms: (1) a BP-8 filed with the prison staff; (2) a BP-9 filed with the prison warden within 20 days of the complained-of actions; (3) a BP-10 filed with the BOP regional director within 20 days of the warden's response; and (4) a BP-11 filed with the BOP's general counsel within 30 days of the regional director's

involving the submission of a "Standard Form 95" or other form of written notice with required information. *See* 28 C.F.R. § 14.2(a); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). Thus, the government argues that the TAC should be dismissed because the BP-10 filings could not possibly exhaust Elmore's administrative remedies under the FTCA. Mem. 3-5, ECF No. 30.

There is no question that the FTCA has an exhaustion requirement that is prerequisite to a lawsuit against a federal agency such as the BOP. 28 U.S.C. § 2675(a); *McNeil v. United States,* 508 U.S. 106, 113 (1993). Exhausting a claim against the BOP requires, in relevant part, the filing of "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2.

Failure to exhaust administrative remedies is normally considered an affirmative defense, and a plaintiff is not obligated to allege facts in their complaint negating an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). However, where the plaintiff's allegations in the complaint demonstrate that an affirmative defense is valid, dismissal under Rule 12(b)(6) is appropriate. *Jones*, 549 U.S. at 215; *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Rather than argue that that he was not required to negate the affirmative defense in his complaint, Elmore responds to the United States' motion by conceding that he did not exhaust. *See* Pl. Resp. 2, ECF No. 34 ("[P]laintiff was unable to comply with the administrative procedures under the FTCA and the Prison Litigation Reform Act."). He then alleges additional facts to supplement the allegations in the TAC and argues that these facts establish that the United States is equitably estopped from raising his failure to exhaust.[4] Alternatively, he requests leave to file a Fourth Amended Complaint to incorporate these new allegations.

This Court will consider Elmore's additional factual allegations to the extent they are consistent with the allegations in the TAC and merely supplement or elaborate on them. *See Smith v. Dart,* 803 F.3d 304, 311 (7th Cir. 2015); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("A party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings"). However, any factual inconsistencies that arise are also fair game, because a plaintiff can plead himself out of court not only by pleading facts that establish an affirmative defense but also by alleging facts that are inconsistent with his theory of relief. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1086

---

response. See 28 C.F.R. 542.13-542.15. If, however, an inmate believes that his safety would be compromised if his grievance became known in his institution, he may seek to shorten the prison grievance procedure by skipping over the BP-8 and BP-9 and submitting a "sensitive" BP-10 directly to the regional director. *Id*.

[4] Specifically, Elmore claims that both an Internal Affairs investigator and his counselor, "Ms. McKorkle," told him that the prison had commenced an investigation, and therefore he did not need to take any further action in order to exhaust his remedies. Furthermore, Elmore claims that, on multiple occasions, BOP employees either ignored and denied his requests for the necessary paperwork for exhaustion.

(7th Cir. 2008) ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief"); *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006) ("[A] party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same."); *see also, e.g.*, *Miller v. City of Monona*, 784 F.3d 1113, 1121-22 (7th Cir. 2015) (plaintiff's own allegations showed defendant municipality's rational basis for allegedly unconstitutional action);

Like other allegations at the pleading stage, Elmore's additional allegations are (to the extent consistent with the allegations of the TAC) assumed to be true for purposes of the motion to dismiss. Elmore now alleges that at the MCC his counselor, "Ms. McKorkle" and the Internal Affairs investigator told him that by initiating an investigation, he had done all he needed to exhaust his remedies. He was never told that a Standard Form 95 was required to preserve his right to sue the BOP. He also alleges that, on multiple occasions, BOP employees both ignored or denied his oral and emailed requests for the necessary paperwork for exhaustion. Elmore says he also could not get the necessary forms when he requested them in Oklahoma and at Marion. Based on these additional facts, Elmore contends that he is excused from any failure to exhaust by the doctrine of equitable estoppel because he was both lulled by misrepresentations and affirmatively misled about the exhaustion requirements. Resp. 2, ECF No. 34. The government argues that it is highly questionable whether this defense is available against the United States, but assuming it is, Elmore does not establish the required elements.

Someone seeking to estop the government must establish the three traditional elements of estoppel—(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; (3) detriment to the party asserting estoppel—and further show that the government committed "affirmative misconduct," which is something more than mere negligence. *United States v. Anaya-Aguirre*, 704 F.3d 514, 519-20 (7th Cir. 2013); *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000).

The affidavit that Elmore submits in support of his equitable estoppel argument fails to establish the required elements, particularly that of affirmative misconduct. The failure of BOP provide him with paperwork is not "affirmative" conduct of any kind, and at most constitutes negligence rather than misconduct. Moreover, Elmore did not have to use any particular form to exhaust his FTCA remedies, such as the Standard From 95; any "written notification" with the required information would suffice under the regulations. *See* 28 C.F.R. § 14.2. Thus any employee's failure to provide Elmore with a Standard Form 95 did not inhibit his ability to exhaust his remedies. Nor is failing to inform Elmore of the exhaustion requirements or explain the exhaustion procedure "affirmative" conduct or any kind of "misrepresentation" on which Elmore could have relied. Elmore does provide any plausible basis on which it can be inferred that his emails or requests were intentionally ignored, but even if they were, that amounts neither to a misrepresentation nor to "affirmative misconduct."

Elmore identifies only one specific instance of a request for assistance regarding filing a claim; that is the October 23, 2011, inmate request directed at the warden, in which Elmore stated that he wanted to be moved back to the general population and to be able to call his attorney because he would be "filing charges against this place for the assault and holding me down here and punishing me." There is in this message no request for any grievance paperwork

or for any kind of assistance; if anything, Elmore's statements conveyed that he had an attorney to advise him on suing the BOP.

That leaves as the only potential affirmative misconduct the statements by the unnamed internal affairs investigator and "Ms. McKorkle" that "initiating the investigation was adequate to preserve [Elmore's] right to sue the BOP." Elmore Decl. ¶¶16-19, ECF No. 34-1. But Elmore does not establish that he reasonably relied upon these alleged misrepresentations in failing to exhaust his remedies under the FTCA. Elmore makes no attempt to explain why it would be reasonable to rely on these individuals for legal advice regarding how to sue the BOP.

Notably, Elmore's operative complaint and all its predecessors said nothing about the alleged misstatements of BOP officials or his reliance on them. To the contrary, even in the Third Amended Complaint he continued to affirmatively allege that he had in fact "exhausted his administrative remedies against the United States" through "the submission of a 'Sensitive B-10' to the Federal Bureau of Prisons." *See* TAC ¶ 8 and 10, ECF No. 27. Elmore now asserts that he did not, but his arguments against dismissal of the TAC require him to contradict express, if gratuitous, allegations in his current and prior pleadings. This court therefore agrees with the government's contention that in asserting that he had exhausted his administrative remedies, Elmore effectively disavowed reliance on any assurances like those he now claims to have received from McCorkle and the BOP internal affairs investigator.

The FTCA's exhaustion requirement is designed to give agencies an opportunity to resolve claims without litigation. *McNeil*, 508 U.S. at 112 n. 7; *Warrum v. United States*, 427 F.3d 1048, 1050 (7th Cir. 2005). Here, although Elmore might have made it clear that he intended to file some kind of action based on some aspect of his treatment at the MCC, he did not provide the United States with notice that he was asserting various claims for damages against it before he filed suit. The Supreme Court has counseled that, in this context, "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *McNeil*, 508 U.S. at 113 (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980)). Although it is possible that equitable estoppel might be an available defense to the FTCA exhaustion requirement, Elmore has not demonstrated that this is an appropriate case in which to apply that doctrine. Accordingly, this Court grants the motion of the United States to dismiss based on the failure to exhaust administrative remedies under the FTCA. Given Elmore's concession that he did not exhaust, and his opportunity to fully argue equitable estoppel (including with the submission of an evidentiary declaration, which this Court has considered), further re-pleading against the BOP would be futile.

## II.  The Individual Defendants' Motion to Dismiss

The individual defendants also move to dismiss the Third Amended Complaint. They primarily argue that Elmore's *Bivens* claims against them are time-barred.[5]

---

[5] The individual defendants also argue, *inter alia*, that Elmore failed to exhaust his administrative remedies for purposes of the PLRA. Elmore again concedes that he did not exhaust (again, in contradiction of the TAC's allegation that he did), but argues that he was excused from doing so because prison officials prevented him from completing the grievance

*Bivens* actions are considered to be personal injury claims and are governed by the statute of limitations of the state in which the injury occurred, in this case, Illinois. *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996). In Illinois, personal injury claims are governed by a two-year statute of limitations. *Id.*; 735 ILCS 5/13-202 (personal injury actions "shall be commenced within 2 years next after the cause of action accrued"). Therefore, a two-year statute of limitations applies to Elmore's *Bivens* claims.

The events underlying Elmore's claims against the individual officers took place while Elmore was in the SHU in October 2011. Elmore amended his complaint to name the Individual Defendants for the first time on May 12, 2015, about three years and seven months after the events described in the TAC, and more than eighteen months after filing the original complaint.

Elmore does not dispute that he did not timely sue the individual defendants. Rather, he argues that (1) the statute of limitations period must be equitably tolled, and (2) the *Bivens* claims "relate back" to his original complaint.

### A. Relation Back

The "relation back" argument can be quickly disposed of. Elmore's original complaint, which was timely filed on October 23, 2013, named only the BOP as a defendant (but as previously noted, *see* n.1, *infra*, the body of the complaint referred to "John Doe" officers). Eight "John Doe" officers were named in the First Amended Complaint of February 17, 2015, already well beyond the expiration of the statute of limitations. The Third Amended Complaint of May 12, 2015, named the specific individual defendants for the first time. Only the original complaint was filed within the statute of limitations, and it contained only common-law tort claims.

For statute of limitations purposes, an amended complaint naming new defendants relates back to the date of the filing of an earlier pleading "only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006); Fed. R. Civ. P. 15(c)(1)(C). The Seventh Circuit has held that a "plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of Federal Rule of Civil Procedure 15(c) such that the plaintiff could amend his complaint outside the statute of limitations upon learning the defendant's identity." *Gomez v. Randle*, 680 F.3d 859, 864 n. 1 (7th Cir. 2012). *See also, King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (Rule 15(c)(3) does not provide for relation back where a plaintiff has "a simple lack of knowledge of the identity of the proper party").

There is no error here that would allow the belated addition of defendants to relate back to the original complaint. Elmore did not mistake the individual defendants' identity; either he did not know their identities at that time, or he did not intend to sue any individuals when he filed his original complaint that contained only an FTCA claim against the BOP. (As noted, Elmore knew the identities of at least defendants Wright and Jones by December 1, 2011). In either case, relation back is not available.

---

procedure and effectively rendered the administrative remedies "unavailable." Pl. Resp. 8-9, ECF. No. 53.

To the extent that Elmore also suggests that he has shown "good cause" under Fed. R. Civ. P. 4(m) for his failure to timely give notice to the individual defendants that the original complaint targeted them, the argument fails. The argument conflates a failure to timely serve with a failure to timely identify the defendants; only the former is excused by "good cause." Elmore suggests that there is also a "good cause" standard for relation back under Rule 15, *see* Pl. Resp. 6-8, ECF No. 53, but in advancing that position he is misapprehending another argument the defendants made against relation back, namely, that it is prohibited by Fed. R. Civ. P 15(c)(1)(C). That rule provides that an amendment naming a new party relates back "if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." As the defendants point out, in this case **no one** received notice of the original complaint within the period provided by Rule 4(m), because Elmore's then-attorney did not timely effect service on the United States,[6] and therefore, it is not possible for a complaint naming a new defendant to relate back. Def. Mem. 5, ECF No. 47. This argument is consistent with Rule 15(c)(1)(C) and provides a further reason why there is no relation back.

### B. Equitable Tolling

Elmore alternatively argues that the statute of limitations should be equitably tolled. Because Illinois law provides the statute of limitations for the *Bivens* claims, the Illinois law of equitable tolling applies as well. *Shropshear v. City of Chicago,* 275 F.3d 593, 596 (7th Cir. 2001). Under Illinois law, a statute of limitations may be equitably tolled "if defendant has actively misled plaintiff; plaintiff in some extraordinary way has been prevented from asserting his rights; or plaintiff has timely asserted his rights mistakenly in the wrong forum." *Block v. Pepper Constr. Co.,* 304 Ill. App. 3d 809 (Ill. App. Ct. 1999); *Ciers v. O.L. Schmidt Barge Lines, Inc.,* 285 Ill. App. 3d 1046, 1052 (1996).

Here, Elmore argues that he is entitled to equitable tolling of the statute of limitations because "the misconduct of BOP and its employees" (not necessarily the defendants) prevented him from exhausting his administrative remedies under the PLRA, and therefore from timely filing suit. Pl. Resp. 3, ECF No. 53. The exhaustion issue is relevant to tolling because "a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process." *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). The Seventh Circuit held in *Johnson* that the two-year statute of limitations should be tolled during the exhaustion process, reasoning that "[t]olling statutes are designed to avoid a 'procedural catch 22,' in which a statute or court order prevents a potential plaintiff from properly filing a cause of action," which in the case of exhaustion leads to a scenario where "the prisoner who files suit under § 1983 prior to exhausting administrative remedies risks dismissal based upon § 1997e; whereas the prisoner who waits to exhaust his administrative remedies risks dismissal based upon untimeliness." *Id.* at 521, 522. Moreover, in

---

[6] This Court later excused that failure, owing to Elmore's trouble with his original attorneys, which is why the defendants have not moved for dismissal for failure to timely effect service of process in spite of the significant delay.

9

*Johnson*, the prisoner had been obstructed in his efforts to exhaust. He alleged that a prison officer destroyed his grievance form and that his repeated inquiries to the prison grievance board proved unavailing. *Id*. at 522. Based on these assertions of misconduct, the Seventh Circuit held that the district court should not have rejected the equitable tolling argument without further inquiry into Johnson's efforts to exhaust.

Elmore argues that the procedural "catch 22" *Johnson* sought to prevent is even more evident in this case because BOP employees prevented him from timely filing the required grievances, and further assured him that by initiating an Internal Affairs investigation he had adequately exhausted his remedies.

The individual defendants reply that tolling the statute of limitations during Elmore's efforts to exhaust would not render his claims against them timely; they argue that if this Court were to exclude the time during which Elmore attempted to exhaust his remedies, the statute of limitations still expired long before Elmore asserted any *Bivens* claims. Elmore's last attempt to exhaust his remedies occurred when he filed his second Sensitive BP-10 on January 11, 2012. TAC ¶ 9, ECF No. 27. Thus, adding in the six months for an administrative response, even if this Court were to toll the statute of limitations through January 11, 2012, his complaint would have been due by July 11, 2014 – nine months before he actually filed his *Bivens* claims.

The plaintiff, however, contends not only that the statute of limitations should be tolled during the unsuccessful administrative exhaustion process—which *Johnson* plainly requires—but that the statute of limitations should be waived altogether because the defendants' misconduct made the filing of timely suit impossible by impeding the exhaustion process. But Elmore fails to demonstrate that such tolling is warranted. Taking his allegations as true, Elmore, through his prior counsel, filed a timely complaint stating an FTCA claim against the BOP. He did so in spite of whatever roadblocks to administrative exhaustion of that claim had been thrown in his way. And the conduct that he alleges interfered with his exhaustion of his FTCA claims is largely the same as that which impeded his exhaustion of the PLRA remedies: namely, the failure of BOP officials to explain how to exhaust and provide him with the right forms, and their misleading him into believing that the internal investigation was sufficient exhaustion. Elmore does not explain how the same conduct prevented him from timely suing the individual defendants when it did not prevent him from timely suing the BOP. If it is because he did not know the identities of the individual defendants (and, again, it is clear that he knew the names of at least Wright and Jones), then to be entitled to equitable tolling he would have to explain how he was prevented from identifying them in a timely way. He has made no effort to do so; nowhere in his briefs does he say that he was prevented by misconduct from learning the identities of the individual defendants within the limitations period. The exhaustion issue, therefore, is a red herring.

Elmore has not established that the extreme untimeliness of his suit against the individual defendants should be excused because a defendant actively misled him or because he was in some extraordinary way prevented identifying those defendants within two years of the SHU incidents.

\* \* \*

At bottom, as to both the United States and the individual defendants, Elmore is requesting that, on equitable grounds, he be relieved of important procedural requirements that he admittedly did not meet: that he exhaust administrative remedies and timely notify the defendants of his claims and file suit against them. Despite the diligent efforts of his court-recruited counsel, and his affidavit setting forth the difficulties he encountered in obtaining the proper paperwork and understanding how to proceed, Elmore has not persuaded this Court that equity requires it to waive these statutory requirements. Therefore, both motions to dismiss are granted. And because Elmore cannot remedy the issues with any further amendments, the case is over.

Date: May 12, 2016

John J. Tharp, Jr.
United States District Judge